UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Twin City Pipe Trades Service                          Civil No. 14-292 (PAM/HB)
Association, Inc., a Minnesota
non-profit corporation,

        Plaintiff,

v.                                                     **MEMORANDUM AND ORDER**

Wenner Quality Services, Inc.,
d/b/a Mr. Rooter of South
Central MN,

        Defendant.

---

This matter is before the Court on the parties' cross-Motions for Summary Judgment.

For the reasons that follow, Plaintiff's Motion is granted and Defendant's Motion is denied.

**BACKGROUND**

This is the second time these parties, albeit in slightly different forms, have been

before the Court.  In 2012, Plaintiff Twin City Pipe Trades Service Association, a trustee

responsible for collecting fringe benefit contributions due under collective bargaining

agreements (CBAs) between local unions and various employers, alleged that several

entities—S&S Thermo Dynamics, Inc, Mankato Plumbing & Heating, Inc., and Shawn

Wenner, d/b/a Mr. Rooter of South Central Minnesota—failed to pay their required fringe-

benefit contributions under a CBA between Mankato Plumbing & Heating (MPH) and

Unions that are part of the Service Association.  Twin City Pipe Trades Serv. Ass'n, Inc. v.

S&S Thermo Dynamics, Inc., No. 12-1417 (D. Minn. filed June 14, 2012).  All of the defendant entities in the 2012 case were owned by either Shawn Wenner, his wife Sara Wenner, or both of them.  The complicated and obfuscating corporate relationships among these entities and the Defendant in this instant case, Wenner Quality Services, are at the heart of this dispute.

Shawn Wenner and his wife, Sara, purchased MPH in 2004.  (Aug. 2, 2013, Order in No. 12-1417, at 2.)  The Wenners were MPH's sole shareholders.  The Wenners purchased a Mr. Rooter franchise in 2006, signing the franchise agreement individually and as the designated franchisees.  (Id.)  MPH was not listed as a franchisee for Mr. Rooter, but in practice the Wenners operated MPH and Mr. Rooter as a single entity or at least as related entities.  (Id. at 2-3.)  MPH was party to the CBA at issue here.  The CBA provided that MPH was obligated to make fringe-benefit-fund contributions for work performed through MPH, including work performed by the Mr. Rooter franchise.  (Id. at 3.)

In 2010, the Wenners reorganized their businesses.  MPH ceased operations at the end of January 2010, and on February 1, 2010, S&S Thermo Dynamics, Inc. took over MPH's operations, ostensibly paying $400,000 for MPH but in fact merely discharging a $400,000 debt MPH had with its bank through a line of credit drawn on a different bank and secured by the Wenners individually.  (Id. at 3; see also Lindsay Aff. (Docket No. 32) Ex. I (Shawn Wenner Dep.) at 91-92.)  Shawn Wenner is the director and president of S&S; Sara had no formal role in the company.  Shawn Wenner wrote to the Unions on January 29, 2010, on

behalf of S&S, saying that MPH would cease operations, but also that S&S would assume MPH's responsibilities under the CBA.  (Wenner Aff. Ex. F (Docket No. 48-1 in 12-1417).)

The same day, however, Shawn Wenner sent a letter to the unions on behalf of Mr. Rooter purportedly repudiating any contract vis-a-vis the unions.  (Id. Ex. G.)  The letter closes by stating: "Please also understand that Mr. Rooter is in the process of selling its assets, and expects to discontinue operations as a going concern on January 31, 2010."  (Id.) This is false, because as the Wenners acknowledge, Mr. Rooter is still operating.

Also on February 1, 2010, the Wenners incorporated Defendant Wenner Quality Services, Inc.  (Aug. 2, 2013, Order at 4.)  Sara Wenner is WQS's director and president. (Id.) The Wenners alleged in the previous litigation that WQS purchased the Mr. Rooter franchise from MPH.  The Court found in the previous Order that there was no evidentiary support for this allegation.  (Id.)  There was also no evidence that WQS paid any money for any of MPH's assets.  The only reason WQS was not a party to the previous litigation is that the Wenners did not disclose the existence of WQS to Plaintiff in that matter until after the time for amending pleadings had passed.  (Id.)  Although the previous Order did not bind WQS, the Order found unequivocally that all of the Wenner entities were "interrelated for purposes of establishing alter ego liability."  (Id. at 12.)

Plaintiff discovered that Mr. Rooter was still operating sometime in 2011, and brought the 2012 lawsuit, seeking unpaid contributions from 2010 onward.  The summary-judgment motions in the first lawsuit resolved only the liability issue and left the damages issue for later determination because the issue was not briefed.  The Order issued in August 2013, and

3

the parties spent the fall and winter in settlement discussions. After months of negotiations, the parties were unable to reach an agreement. Thereafter, S&S filed a motion for partial summary judgment on the issue of damages, and Plaintiff filed a cross-motion for entry of judgment on damages. The Court scheduled the motion for a hearing in August 2014, but the day before the scheduled hearing, S&S filed for bankruptcy. The case was thereafter administratively terminated.

Rather than reopen the previous case and seek to add WQS as a party, Plaintiff instead filed a new case, naming WQS and Sara Wenner as Defendants. Sara has subsequently been terminated from the litigation. The Complaint here contains one count seeking alter ego liability against WQS for Mr. Rooter's CBA obligations in an amount more than $180,000, and one count seeking a permanent injunction directing WQS to make timely and weekly contributions to the fringe-benefit funds.

The parties now cross-move for summary judgment. Plaintiff asks the Court to find that WQS is an alter ego of the other Wenner entities[1] for purposes of CBA contributions, while WQS seeks judgment that there is no such evidence in the record. Once again, there is no discussion in either parties' Motion on the issue of damages. And at the hearing, WQS seemed to abandon its Motion, instead contending that material issues of fact preclude judgment in Plaintiff's favor.

---

[1] The August 2013 Order dismissed MPH from the case because that company was dissolved in 2010.

4

**DISCUSSION**

Summary judgment is proper if there are no disputed issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The Court must view the evidence and the inferences that may be reasonably drawn from the evidence in the light most favorable to the nonmoving party. Enter. Bank v. Magna Bank, 92 F.3d 743, 747 (8th Cir. 1996). However, "summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed to secure the just, speedy, and inexpensive determination of every action." Celotex Corp. v. Catrett, 477 U.S. 317, 327 (1986).

The moving party bears the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. Id. at 323; Enter. Bank, 92 F.3d at 747. A party opposing a properly supported motion for summary judgment may not rest on mere allegations or denials, but must set forth specific facts in the record showing that there is a genuine issue for trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986).

As the parties' arguments at the hearing on the cross-Motions established, the crux of the instant dispute is whether collateral estoppel precludes WQS from contesting its liability as an alter-ego of the other Wenner entities. According to WQS, the Court made serious factual errors in the previous Order that it should correct by declining Plaintiff's request for summary judgment in this case. Alternatively, WQS contends that, because there was no final judgment in the previous matter, collateral estoppel does not apply.

The Supreme Court has "long recognized that 'the determination of a question directly involved in one action is conclusive as to that question in a second suit.'" B&B Hardware, Inc. v. Hardis Indus., Inc., 135 S. Ct. 1293, 1303 (2015) (quoting Cromwell v. County of Sac, 94 U.S. 351, 354 (1877)).  In other words, "a losing litigant deserves no rematch after a defeat fairly suffered." Astoria Fed. Sav. & Loan Ass'n v. Solimino, 501 U.S. 104, 107 (1991).

The general rule of collateral estoppel, or issue preclusion, is that "[w]hen an issue of fact or law is actually litigated and determined by a valid and final judgment, and the determination is essential to the judgment, the determination is conclusive in a subsequent action between the parties, whether on the same or a different claim." Restatement (Second) of Judgments § 27.  WQS contends that, because a final judgment was not entered in the prior litigation, collateral estoppel does not apply.  But this is an oversimplified application of preclusion principles.

Courts "have relaxed traditional views of the finality requirement in the collateral estoppel context by applying the doctrine to matters resolved by preliminary rulings or to determinations of liability that have not yet been completed by an award of damages or other relief, let alone enforced." In re Nangle, 274 F.3d 481, 484-85 (8th Cir. 2001).  Or, as another decision stated, "'finality' in the context of issue preclusion may mean little more than that the litigation of a particular issue has reached such a stage that a court sees no really good reason for permitting it to be litigated again." John Morrell & Co. v. Local Union 304A

of the United Food & Comm'l Workers, 913 F.2d 544, 563 (8th Cir. 1990).  This is precisely the situation here.

In the previous litigation, the Court conclusively determined the issue of alter-ego liability for all Wenner entities, including WQS.  (Aug. 2, 2013, Order at 12.)  There was nothing remaining to be litigated on the liability issue; the only remaining issue in the case was damages.  Moreover, the evidence regarding alter-ego liability was overwhelming, despite WQS's protestations to the contrary.  The record included business documents, deposition testimony, and letters written by Shawn Wenner.  The Court's review of the undisputed evidence was thorough and led to the inescapable conclusion that those entities were interrelated for purposes of liability.  (Id.)

WQS is precluded from relitigating the issue of its liability under the CBA for fringe-benefit fund contributions.  The only remaining issue for resolution is the amount of those damages.

**CONCLUSION**

Issue preclusion applies to prevent WQS from disputing its liability as the alter ego of the other Wenner entities for purposes of its liability for unpaid contributions on behalf of Mr. Rooter.  Accordingly, **IT IS HEREBY ORDERED that**:

1.     WQS's Motion for Summary Judgment (Docket No. 25) is **DENIED**; and

2.     Plaintiff's Motion for Summary Judgment (Docket No. 26) is **GRANTED**.

Dated: <u>September 3, 2015</u>

<u>*s/ Paul A. Magnuson*        </u>
Paul A. Magnuson
United States District Court Judge