## UNITED STATES DISTRICT COURT
### DISTRICT OF MINNESOTA

Twin City Pipe Trades Service          Civil No. 14-292 (PAM/HB)
Association, Inc., a Minnesota
non-profit corporation,

         Plaintiff,

v.                 **MEMORANDUM AND ORDER**

Wenner Quality Services, Inc.,
d/b/a Mr. Rooter of South
Central MN,

         Defendant.

_____

This matter is before the Court on Plaintiff's Motion for Entry of Judgment on Damages. Plaintiff also seeks attorney's fees and costs, and the issuance of a permanent injunction. For the reasons that follow, Plaintiff's Motion is granted in part and denied in part.

## BACKGROUND

This case is the second iteration of the parties' dispute, and the full factual background is set forth in the Court's Order granting Plaintiff Twin City Pipe Trade Service Association's Motion for Summary Judgment (Docket No. 46), and in the Court's Order in the previous case, Twin City Pipe Trades Serv. Ass'n, Inc. v. S&S Thermo Dynamics, Inc., No. 12-1417 (D. Minn. filed June 14, 2012) (Docket No. 56).

The Court's Order in this matter determined that Defendant Wenner Quality Services

is the alter ego of the defendants in the previous litigation and, like them, is bound by the terms of the collective bargaining agreements signed by their predecessor companies. The parties did not, however, brief the issue of what amounts are due under those CBAs. That issue is now fully briefed and before the Court for determination.

The Complaint contends that WQS owes fringe-benefit-fund contributions from February 1, 2010, to the present. Thus, Plaintiff argues that it is entitled to the unpaid contributions, liquidated damages on those unpaid amounts, interest, and their costs and fees. According to Plaintiff, WQS owes $376,496.76 in unpaid contributions through the end of February 2016, liquidated damages of $37,649.68, and interest of $37,201.21. Plaintiff's costs and attorney's fees are $32,771.25. Plaintiff also seeks the entry of a permanent injunction.

**DISCUSSION**

**A.    The CBAs' Requirements**

The first issue is what agreement governs this matter. WQS argues that Plaintiff's citations to a 2008 agreement are improper because WQS (or its alter egos) only signed agreements in 2007 and 2010. Plaintiff explains that it uses the 2008 agreement as a representative agreement; it does not dispute the existence of the other agreements but contends that those agreements' provisions do not differ in any substantive respect, other than with regard to liquidated damages, from the sample 2008 agreement on which it relies. WQS also contends that the 2010 agreement expired as of April 30, 2015, and thus that its contribution obligations ended on that date. But the CBAs all provide that they continue in

2

force from year to year if neither party cancels.  WQS has not cancelled, so the agreement remains in force.

WQS raises a host of arguments against the damages Plaintiff seeks.  WQS first contends that because the contributions are split among various funds, Plaintiff has to establish that it is entitled to collect on behalf of each fund and this is a question for a jury to decide.  But the CBAs and the parties' longstanding practice provide that all amounts are paid to Plaintiff, which divides the proceeds into each fund.  This argument is without merit.

WQS also contends that Plaintiff does not have standing to collect the contributions for other funds because Plaintiff is only a third-party beneficiary of the CBAs.  This argument is similarly meritless.  ERISA puts fiduciaries in the special position of being able to enforce agreements to which they are not parties without being subject to contract defenses.  Central States, Se. & Sw. Areas Pension Fund v. Indep. Fruit & Produce Co., 919 F.2d 1343, 1347 (8th Cir. 1990).  This is not a new or novel proposition; WQS's insistence on raising such a meritless argument casts doubt on all of WQS's arguments here.

WQS next argues that some of the benefit plans involved here are non-ERISA plans, so that Plaintiff cannot recover under ERISA for the amounts owed to those plans.  WQS says that both the "working fee" and "credit union fee" are not ERISA-covered plans, nor is the "industry fund" payment.[1]  WQS is correct that Plaintiff's only claim here is under ERISA.  But it is far too late to be making an argument regarding the merits of Plaintiff's

---

[1] By way of example, for a plumber the contributions to these three funds constitute $2.89 out of the total of $21.68 due in fringe benefits.

claims.  The Court granted summary judgment to Plaintiff on its claims, finding that it was entitled to recover all amounts due under the terms of the parties' agreements.  If WQS wanted to challenge the merits of the underlying claims, it should have done so on summary judgment.  Moreover, as with the right-to-collect argument discussed previously, this argument is without merit in any event.  Under the terms of the CBAs and under the practice of all parties to the CBA, Plaintiff has collected these fees for years.  It can continue to do so without having to bring a collection action under a different statute.

WQS contends that Plaintiff failed to "show its work" in calculating the rates it used for each month of hours worked.  But the failure in this regard is WQS's, not Plaintiff's.  WQS did not submit its employees' hours to Plaintiff in a format that would allow Plaintiff to make this calculation.  Rather, WQS submitted calendar-year hours, forcing Plaintiff to make assumptions about the amount of work performed in any one month.  WQS also did not give Plaintiff the classification for each individual employee, which is important because fund contribution rates depend to a certain extent on an employee's seniority and job classifications—an employer pays less in fringe benefits for a first-year apprentice than a journeyman, for example.  Plaintiff attempted to discern which employee was subject to which rate, and when there were doubts, it used the lower rate.  WQS's complaints in this regard are of its own making.  Plaintiff is entitled to unpaid fringe-benefit fund contributions from February 1, 2010, through February 29, 2016, of $376,496.76.

4

**B.      Liquidated Damages/Interest**

WQS contends that the CBAs it signed make no provision for liquidated damages, and that the Court should therefore decline to give Plaintiff those damages.  Plaintiff responds that liquidated damages are also available under ERISA itself.  But ERISA provides that liquidated damages are available if "provided for under the plan."   29 U.S.C. § 1132(g)(2)(C)(ii).  Because the agreement here contains no provision regarding liquidated damages, ERISA does not mandate the award of such damages.  Plaintiff is not entitled to liquidated damages.

Plaintiff is, however, entitled to interest.  ERISA makes an award of interest mandatory.  Id. § 1132(g)(2)(C)(i).  The parties' agreements provide for an interest rate of 3.25%, which amounts to total interest of $37,201.21.

**C.      Injunction**

Plaintiff asks for a permanent injunction requiring WQS to make its contributions under the CBAs going forward, and to post a bond of $18,000 to secure this obligation. ERISA provides that a Court shall award "such other legal or equitable relief as the court deems appropriate."   Id. § 1132(g)(2)(E).  Plaintiff points out that, despite the Court's holding last September that WQS was S&S's alter ego for purposes of CBA liability, WQS has refused even since then to make any contributions whatsoever to the Funds.

WQS argues that injunctive relief is not appropriate where Plaintiff has an adequate remedy under ERISA.  This argument ignores the realities of this protracted litigation. Plaintiff has been seeking these contributions from WQS and its predecessors for nearly four

5

years.  WQS's contention amounts to an assertion that Plaintiff can bring another lawsuit if WQS refuses once again to make the contributions it is bound to make.  In this situation, the equities demand protection for a Plaintiff who has been stymied at every turn by recalcitrant Defendants seeking to hide behind corporate forms and obtuse corporate relationships to avoid paying the amounts they owe.  Enough is enough.  Plaintiff is entitled to an injunction.

**D.      Attorney's Fees**

In the opening pages of its memorandum, WQS argues that Plaintiff's request for fees of $94,367.50 is excessive and the Court should award no more than $50,000.  But Plaintiff requests just under $33,000 in costs and fees, and thus WQS's contentions are misplaced.

WQS later corrects itself and still objects to the fees requested, even though the actual requested fees are lower than the amount WQS initially offers as a reasonable amount of fees.  Given the conduct of WQS and its sister companies in this and the previous litigation, WQS's arguments against the award of fees border on specious.  WQS and its predecessors have engaged in protracted litigation in this and the previous matter; they even contested alter-ego liability in this case despite the Court's conclusive determination of the issue in the previous case.  An award of $32,771.25 in fees for this case is eminently reasonable.

**CONCLUSION**

Accordingly, **IT IS HEREBY ORDERED that**:

1.      Plaintiff's Motion for Entry of Judgment (Docket No. 46) is **GRANTED**;

2.  Judgment is entered against Defendant Wenner Quality Service, Inc., in the total amount of $446,469.22, which consists of:

    a.  Unpaid fringe benefit contributions:  $376,496.76

    b.  Interest:  $37,201.21

    c.  Attorney's fees and costs:  $32,771.25;

3.  Defendant and its alter ego corporations, including Mr. Rooter of South Central Minnesota, are hereby **ENJOINED** from refusing to submit fringe benefit contributions on a monthly basis to Plaintiff for hours worked by Mr. Rooter or other covered employees on and after March 1, 2016, and for so long as Defendant has a contribution obligation; and

4.  Defendant shall post a bond in the amount of $18,000 as a security for three months' future contributions.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated:   March 22, 2016

                                          s/Paul A. Magnuson
                                       Paul A. Magnuson
                                       United States District Court Judge